# MAKEN v THE BOARD OF TRUSTEES OF THE CITY OF MIAMI FIRE FIGHTERS' and POLICE OFFICERS' RETIREMENT FUND

Case No. 88-248-AP

Eleventh Judicial Circuit, Dade County

March 6, 1989

## APPEARANCES OF COUNSEL

**Marvin J. Kristal, Ira J. Druckman, P.A.,** for appellant.

**Myles G. Cypen,** for appellees.

Petition For Writ Of Common Law Certiorari.

Before KORNBLUM, MORENO, KAHN, JJ.

## OPINION OF THE COURT

KORNBLUM, A.

Petitioner Maken asks the Court to review the decision of the Board Of Trustees Of The City Of Miami Fire Fighters' and Police Officers' Retirement Fund (The Board), denying his application for benefits claiming total disability to perform his duties as a police officer.

The sole question presented is whether there was substantial competent evidence to support the Board's denial. *Hampton v Miami City Employees Retirement System,* 528 So.2d 103 (Fla. 3d DCA 1988).

Competent substantial evidence has been defined as such evidence as will establish a substantial basis of fact from which the fact at issue can reasonably be inferred. *Duval Utility Co. v Florida Public Service Commission,* 380 So.2d 1029 (Fla. 1980).

Maken's treating physician, Dr. Enrique Gorin, was asked:

"Q. Do you have an opinion, based on reasonable medical probability, as to whether or not Mr. Maken can engaged in any kind of work, no matter how light, uninterruptedly?" (Page 9 Dep. Dr. Gorin)

He answered,

"A. The answer to the question is no. I don't think so, and mainly because of the pain that he has. And when he has pain, his blood pressure actually reacts directly to the pain, tension, et cetera." (Page 10 Dep. Dr. Gorin).

On August 27, 1987 Dr. Gorin advised the Board that Maken should be retired (A144).

Dr. Cavanaugh who examined Maken at the request of the Board testified,

THE WITNESS: My gut feeling, and this is not . . . it's that he will not get better and will not be able to return as a police officer despite even if you do additional therapy for a year, that's my gut feeling, but I think we have left out the reason for that is not because of the orthopedic injuries, the reason for that is because of his basic personality and mind set is such that I don't think he'll be able to rehabilitate. Does that make sense?" (TR58).

The City of Miami terminated Maken's employment by letter of the Chief Of Police dated 3/28/88 (A130) finding him "physically unable to perform the duties associated with the position of Police Officer."

True, that the termination of total disability by the City is not binding on the Board nor does it estop the Board but certainly it should be considered in determining whether there was substantial competent evidence to support the Board's action.

The Board's action is based on findings that:

1. The doctors found Maken less than 100% anatomically disabled.

2. Maken, according to Dr. Cavanaugh, had not reached maximum medical improvement.

3. Maken had not cooperated in psychological treatment stating that he just "wants out."

147

4. Petitioner's claim of pain were not credible.

5. Petitioner's disability is related to injuries incurred prior to employment (TR63).

In passing, counsel for the Board, at oral argument, questioned the transcript as one not certified and transcribed from a tape recording. We note, however, that the Board's own guidelines approve such transcripts (A107).

Addressing the findings of the Board in the order presented:

1. Ratings of anatomical disability have no bearing, whatsoever, to the percentage of functional disability. It was conceded by the Board's Counsel, that a concert pianist may be functionally totally disabled, because of the partial anatomical disability of a finger. So in Maken's case, his anatomical disability has little relation to his ability to function as a police officer.

Drs. Gorin and Cavanaugh and The City of Miami found Maken physically unable to perform the duties of a police officer.

2. A reading of Dr. Cavanaugh's testimony clearly indicates that his opinion of Maken's disability is not affected by his determination that he had not reached maximum medical improvement.

3. True, Maken declined further psychological treatment. This was one of the factors taken into consideration by Dr. Cavanaugh in reaching his opinion that Maken could not again function as a police officer.

4. There is absolutely no evidence that Maken is exaggerating his pain though it may be enhanced by psychogenic overlay. The reported pain is borne out by the objective findings of the doctors.

5. With regard to the suggestion in a medical report of Dr. Cavanaugh that Maken reported in a pre employment physical that he had chronic back pain related to an accident in 1964, the evidence is that:

(a) Though he was deferred for peacetime service, he was classified 1-A.

(b) In the 1984 physical conducted by Dr. Cavanaugh, he found no back abnormality.

(c) He had no back problem which affected his ability to do his job until he suffered the injury while trying to rehabilitate his knee injured in the course of his duties.

There is absolutely no medical evidence that Maken's disability is related to the injury in 1964.

148

Finally, as Board Member, Hall observed, in voting against denial, the Petitioner's hypertension is without question, related to his employment.

At best, the Board's conclusion that the Petitioner's disability was not related to his service as a police officer is based on mere doubt and suspicion. Doubt and suspicion do not meet the definition of competent substantial evidence stated in *Duval Utility Co.* (supra).

In view of the lack of evidence for the Board's decision, the petition is granted, with directions to hold a new hearing, grant the disability application or to take other action consistent with this opinion.