### STATE ex Rel. ROBERT ROSS HACKNEY v. GEORGE A. PIERCE, et al.

26 So. (2nd) 186                                      January Term, 1946
May 28, 1946                                          Division B

*Martin J. Pearl,* for appellant.

*William M. Madison* and *Eli H. Fink,* for appellees.

THOMAS, J.:

The facts underlying this controversy are not complex. After relator had been a laborer in the Electrical Distribution Department of the City of Jacksonville for a year he was advanced to the position of "groundman." A few months later, while serving in this capacity, he was injured when he fell from a pole. Nevertheless he was eventually promoted to the rank of apprentice lineman (third class), only to discover shortly afterward that he · could not perform the duties of that position. because of the effects of the injury. He was thereupon given lighter work such as reconditioning salvaged material and acting as gateman, for which, however, he received compensation equal to that he would have earned had he continued as an apprentice lineman.

Relator's application for retirement under the pension system created for the benefit of employees of the City of Jacksonville was denied, and he resorted .to mandamus to coerce the city commissioners, the city treasurer, and the members of the advisory committee of the pension adminis-

tration to place him on the pension roll. If successful in this effort he would be paid monthly one-half the salary he was earning at the time he claims to have been incapacitated.

In short, relator is able to do certain work which yields an income equivalent to the amount he was being paid when hurt, but he, by reason of the injury, is precluded from performing the work to which he was then assigned.

We turn now to Chapter 18610, Laws of Florida, Special Acts of 1937, and amendments, Chapters 19902, 21320, and 22342, enacted, respectively, in 1939, 1941, and 1943, relating to the pension plan. Administration of the acts is the responsibility of the city commissioners, who are trustees of the fund and are empowered to formulate rules and regulations for its governance, and the advisory committee elected by the employees, without whose approval no pension can be granted. Two provisions of the acts are stressed by relator. One ensures a pension to employees "who become, in the opinion of said Advisory Committee, incapacitated for the performance of their duties"; the other, a pension to employees who "shall be permanently injured . . . in line of duty." The latter provision seems to have been deleted when Section 6 of the original act was amended by Chapter 21320 of the Acts of 1941, but we shall not pause to discuss the effect of this omission because in the alternative writ this language was quoted as a part of the pension act and in the answer the paragraph of the writ so quoting it was admitted.

In neither event, as we understand the general pattern and construe the several provisions of the acts embodying it, is relief available in the absence of recommendations or approval of the advisory committee which the employees themselves choose. In relator's case this sanction was withheld; so we have for determination the question whether he should be retired on half pay because incapable of performing the duties of the position he held when injured, although admittedly he is capable of serving in another capacity with undiminished wages.

We do not find in the record in this case evidence that the committee in declining relator's petition for relief acted capriciously or, as he charges, arbitrarily. In assembling

the facts we have consulted the alternative writ, as well as the answer and a stipulation signed by counsel for the parties. In the last appear the cogent statements that the advisory committee "carefully considered" the application, "heard the relator in person," studied the medical reports, and "in good faith" denied the claim. These agreed facts gainsay any charge that the committee indulged in whimsy.

It seems to us that to encourage demands, such as relator presented, upon the pension fund would ultimately defeat the principal purpose for which it was established—that is, to assure the employee economic security and stability. Honoring relator's demand would be contrary to the spirit of the plan. From the stipulation it is patent that he is paid now as much as he received when he was injured. His security, therefore, seems unaffected, and he would be in worse position from that standpoint were he retired on half pay. If he assumed this status he would evidently have the choice either of living in idleness at the expense of the fund, and therefore to the disadvantage of his fellows who contribute periodic assessments to its maintenance, or of supplementing this income with employment elsewhere (except with a city, county, or state government or the federal government, Section 9, Chapter 18610). In the latter event he would at once be receiving contributions from the fund on the theory that he was incapacitated while proving his capacity to earn by actually performing labor or services. Neither of these courses appears to us harmonious with the design and purpose of the pension act.

Relator has made a point of the possibility, or probability, that as presently employed he is deprived of the promotion with which he might have been rewarded had he not been injured and had continued his employment as a lineman, but this position does not impress us greatly. Certainly if he were awarded the retirement status he has requested it would end all advancement and make his income, at least from this source, static.

We have not paused to decide the procedural question of availability of mandamus in cases of this kind, preferring to pass on the merits of the contest.

In our study of the record we have discovered no sufficient reason to disturb the judgment in favor of respondents; so it is—.

Affirmed.

CHAPMAN, C. J., BROWN and SEBRING, JJ., concur.